Dear Representative Mead:
This letter is in response to your question asking as follows:
 Can the teachers fund of a school district be used to provide a self-funded health benefits program for teachers or must it be used only for an insured program in which premiums are paid?
You also state:
 The Missouri School Boards Association is contemplating establishment of insurance programs for member districts. The program contemplates a self-funded health benefits package in which premiums would not be paid to an insurance company but would be placed in a fund from which benefits are to be paid. There would be a stop clause provision to ensure that the district would not spend more than the amount budgeted in the insurance trust.
We have also been furnished with a copy of the administrative services agreement which is proposed between the school districts and the administrator. We will not attempt to pass upon all of the provisions respecting such agreement, however, we point out a few problems which we believe clearly exist.
That portion of the proposed plan calling for deposit and disbursement of plan funds appears to violate several statutory provisions forbidding the handling of school funds by anyone but the treasurer. Section 165.021, RSMo, for example, requires the disbursement of all school moneys by treasurers of school districts. Section 162.641, RSMo, sets out specific duties for the treasurer of a metropolitan school district with respect to the supervision of funds. Further, Sections 162.401 and 162.541 provide in similar manner but in less detail for the duties of the treasurer in a six-director district and in an urban district, respectively. Thus, it appears that that portion of the proposed agreement which calls for issuance of claim checks and payments of the excess loss and other costs by the administrator on behalf of the school district is contrary to Missouri law. Further, that portion of the agreement which states that the administrator is acting only as agent of the school district would not be sufficient to satisfy the strict requirements contained in Sections 165.021, 162.641, 162.401 and162.541, RSMo.
One could interpret the single payment by the school district to the administrator each month, covering all the costs of the plan, as the only disbursement of school district funds, and thus, the only one necessary to be made by the treasurer. However, because the agreement emphasizes the agency of the administrator, and because medical claims are paid on behalf of the school district, it appears that at least a percentage of these funds remain school district funds and are used to pay the indebtedness of the school district, within the meaning of subsections 2 and 4 of Section 165.021, RSMo. Therefore, such funds would have to be maintained in a school fund and disbursed by the treasurer of the school district.
Another potential problem is presented by Section 162.641 which states, in part, that the metropolitan school district treasurer must be the custodian of ". . . all securities, documents, title papers, books of record and other papers belonging to the board, . . . and shall preserve in his office all accounts, vouchers and contracts pertaining to school affairs." The words of the statute may be narrow enough to leave out records of the processing of claims, or allow for a set of duplicate records to be maintained by the administrator. Since the statute requires that certain of the records be maintained in the treasurer's office, one cannot argue that this duty can be delegated to an agent located elsewhere.
Therefore, it appears that the proposed agreement violates state law in several ways. While it may be possible to make technical modifications correcting the difficulties mentioned, the difficulties in drafting a plan which would meet the precise requirements of existing state law appear to be numerous. Therefore, it appears that legislative authorization to effect and implement such a plan should be sought.
In addition, the enactment of Section 67.150, RSMo Supp. 1982, clearly raises the question as to whether or not the procedure provided in such section is exclusive.
Such section provides:
 1. the governing body of any political subdivision may utilize the revenues and other available funds of the subdivision, as a part of the compensation of the employees of the subdivision, to contribute to the cost of a plan, including a plan underwritten by insurance, for furnishing all or part of hospitalization or medical expenses, life insurance or similar benefits for the subdivision's employees.
 2. No contract shall be entered into by the governing body of the political subdivision to purchase any insurance policy or policies pursuant to the terms of this section unless the contract is submitted to competitive bidding and the contract is awarded to the lowest and best bidder.
We enclose a copy of our Opinion No. 9, to Wilson, dated October 12, 1982, in which we discussed the procedure to be followed pursuant to Section 67.150 in some detail.
It seems clear that the enactment of Section 67.150 without any provision for a plan such as you describe may be argued as foreclosing the use of such a plan. Section 67.150 was enacted in 1980 and there are no appellate case decisions on the question of whether or not the provisions of such section are exclusive.
It, therefore, seems clear that we are not in a position to recommend implementation of such a plan in the absence of specific legislative authority.
Very truly yours,
 JOHN ASHCROFT Attorney General
Enclosure: Opinion No. 9-1982